JOE W. STEVENSON AND MRS. O. B. HOLBRUNER v. WACHOVIA BANK AND TRUST COMPANY, ADMINISTRATOR C. T. A., OF A. L. STEVENSON, ET AL.

(Filed 8 January, 1932.)

1. **Wills F h—Legacy in this case held to have lapsed by reason of the death of the legatee prior to the death of the testator.**

   Where a testator leaves all his property real and personal to his wife for life, and directs that after her death that the whole estate should be reduced to cash and, after payment of certain specific bequests, distributed among his brothers and sisters and the brothers and sisters of his wife, if living, and if not living, to their legal representatives, *Held:* where one of the brothers and the wife of such brother die prior to the death of the testator, and leave no children them surviving, the legacy as to them lapses they having acquired no interest under the will.

2. **Wills E f—Held: lapsed legacy under the will in this case was thrown into residuary clause for distribution to designated class.**

   Whether a clause is a residuary clause is not dependent upon any particular form of expression but upon the intention of the testator, and where a will provides that after the termination of a life estate that the whole estate should be reduced to cash and, after payment of certain specific bequests, distributed among a specific class, *Held:* where the legacy of one of the class lapses by the death of the legatee prior to the testator's death, the amount of such legacy is thrown into the fund for distribution among the class named, and it does not go to the next of kin of the legatee. C. S., 4166.

3. **Death A a—Presumption of death after seven years absence raises no presumption of death at any particular time.**

   The presumption of death after seven years absence without being heard from by those who might be expected to hear from the absent

person if he were living does not raise any presumption of death at any particular time, but that the absent person is dead after the expiration of seven years where there is no other evidence.

4. **Wills E f—Held: construing will as a whole the meaning of the words "legal representatives" is "children" or "issue."**

Where a testator provides that after the termination of a life estate that the whole estate be reduced to cash and, after the payment of certain specific legacies, divided among his brothers and sisters and the brothers and sisters of his wife, if living, and if not living to their legal representatives, *Held:* construing the context of the entire instrument, the meaning of the words "legal representatives" is "children" or "issue," and where one of the class is presumed to be dead after absence of seven years, and leaves no children, the legacy to her lapses, and the amount thereof is thrown into the fund for distribution among the members of the class specified.

APPEAL by plaintiffs from *Clement, J.,* at June Term, 1931, of FORSYTH. Affirmed.

A. L. Stevenson died on 17 February, 1917 (not 1925, as reported in a former appeal) leaving a last will and testament, two items of which were under consideration in *Trust Co. v. Stevenson,* 196 N. C., 29. He appointed his wife, Emma A. Stevenson, his executrix. She died 29 August, 1925.

The testator devised to his wife his real and personal property, "to have and use the same during her natural lifetime, with full power to dispose of such real estate and personal property or money as might be necessary for her comfortable maintenance and support," excepting certain dispositions which were otherwise made. He directed that his property should be converted into cash after the death of his wife and the proceeds, less the amount of two legacies, applied as follows: "To my brothers and sisters, if living, if not living, to their legal representatives; to the brothers and sisters of my wife if living, or if not living to their legal representatives." He left no children.

After the death of the executrix the Wachovia Bank and Trust Company qualified as administrator *d. b. n. c. t. a.* of the testator's estate and instituted an action in the Superior Court for the purpose of determining and identifying the beneficiaries named in the clause heretofore set out. The Superior Court held that the proceeds should be distributed per capita among the living brothers and sisters of the testator and of his deceased wife and *per stirpes* among the legal representatives of the deceased brothers and sisters of the testator and of his deceased wife, and found as a fact that those who took under the fifth item were the following: (1) Joe W. Stevenson, a brother of the testator; (2) Mrs. J. C. Salley, a sister; (3) Mary Stevenson, a sister, "if living";

(4) A. P. Stevenson, a brother, whose death occurred after that of the testator, leaving a son who conveyed his interest in the estate to T. W. Terry; (5) Amanda Stevenson, a sister, who died leaving a son, J. P. Stevenson; (6) Sandy Stevenson, a brother, who died prior to the death of the testator without lineal descendants, leaving a widow who died during the lifetime of the testator; (7) R. C. Rights (Wrights), a brother of Mrs. Emma A. Stevenson; (8) Will Rights (Wrights), a brother who conveyed his interest to R. J. Lineback; (9) Mrs. R. C. Jenkins, a sister; (10) Mrs. G. W. Booe, a sister, who died leaving a daughter Mrs. J. J. Mock. This Court on appeal affirmed the judgment of the Superior Court. *Trust Co. v. Stevenson, supra.* The opinion was certified to the Superior Court and at a subsequent term it was adjudged that the cause go off the civil issue docket.

Upon a difference of opinion as to the designation of those entitled to share in the proceeds under the fifth item of the will, a petition was filed in the Superior Court on 23 March, 1929, entitled as in the original proceeding, for advice. No new process was issued, but all the parties to this litigation were duly made parties to the original proceeding. On the same day the court made an order which is not in the record, and pursuant thereto the administrator divided the proceeds into eight equal parts, giving no share to Sandy Stevenson—he and his widow having died without issue, or to Mary Stevenson, who had not been heard from for many years.

In its answer the administrator alleges that under appropriate orders of the Superior Court it has paid all sums due the legatees and has filed its final account, which has been duly approved.

In May, 1930, the petitioners instituted the present proceeding before the clerk to annul the order made at the March Term, 1929, of the Superior Court, and to recover one-half of the two shares referred to as the shares of Mary Stevenson and Sandy Stevenson, "approximately $7,200." The respondents filed answers and the clerk transferred the cause to the civil issue docket. It came on for hearing at the June Term, 1931, and at the close of the petitioners' evidence Judge Clement dismissed the proceeding and taxed the cost against the petitioners, who excepted and appealed.

*John M. Greenfield, Roy L. Deal and Fred H. Morris for appellants.*
*DuBose & Weaver for administrator, appellee.*

ADAMS, J. This is a proceeding brought before the clerk of the Superior Court to require the Wachovia Bank and Trust Company, as administrator with the will annexed of the estate of A. L. Stevenson, to pay to the petitioner O. B. Holbruner, as assignee of her father Joe W.

Stevenson, copetitioner, the interest her father claimed in the estate as a legal representative of Mary Stevenson and Sandy Stevenson, a deceased sister and a deceased brother of the testator. The pleadings raised issues of fact, and the cause was transferred to the civil issue docket, and at the trial it was dismissed as in case of nonsuit.

According to the findings of fact set out in the judgment rendered in the Superior Court at the November Term of 1927 the brothers and sisters of the testator and of his wife were ten in number. It is with the interest of Mary Stevenson and Sandy Stevenson that the present controversy is chiefly concerned. Sandy died prior to the death of the testator, leaving no children but a widow whose death, also, preceded that of the testator. There is no definite evidence of Mary's death, but there is testimony that she was last heard from by the family in the early part of the year 1912. The argument of the appellants is based, at least in part, on the presumption of her death. They contend that Joe W. Stevenson and Mrs. J. C. Salley are the two nearest of kin of Mary and Sandy and that the appellants are entitled to one-half of these two shares. Mrs. Salley, one of the defendants, admits the principal allegations of the petition and apparently espouses the cause of the plaintiffs.

The position of the appellants rests primarily on their interpretation of the judgment rendered by Judge Stack and affirmed on appeal to this Court. *Trust Co. v. Stevenson, supra.* This judgment, they contend, awarded one share of the testator's estate to the legal representatives of Sandy Stevenson, and to Mary Stevenson one share, if living, and if not living to her legal representatives; that the legal representatives of these two are those on whom the descent would be cast by the statute of distributions; and that the petitioners and Mrs. Salley are entitled to the whole of the two contested shares. They admit that the only point in dispute regarding the effect of the former judgment is the meaning of the term "legal representatives."

We are unable to concur in the appellants' interpretation. When the will in controversy was brought to this Court on the former appeal we construed the fifth item as expressing the testator's intention to distribute the funds arising from the sale per capita among such of his own brothers and sisters and those of his wife as were living at the termination of the life estate, and *per stirpes* among the legal representatives of such as were deceased at that time. *Trust Co. v. Stevenson, supra.* It is perfectly obvious from the facts heretofore stated that neither Sandy Stevenson nor his wife acquired any interest under the will. They predeceased the testator, leaving no children, and the legacy lapsed.

In the absence of a residuary clause a lapsed legacy will ordinarily go to the heirs or the next of kin as in case of intestacy, but the disposition is ultimately controlled by the intent of the testator. *Reid v. Neal,* 182 N. C., 192, 199. If there is a residuary clause such a legacy falls into the residue. C. S., 4166; *McCorkle v. Sherrill,* 41 N. C., 173; *Coley v. Ballance,* 60 N. C., 634. Whether a clause is residuary is not dependent upon any particular form of expression but upon "the intention to include." *Allison v. Allison,* 56 N. C., 236; *Faison v. Middleton,* 171 N. C., 170.

With respect to the fifth item of the will what was the testator's intention? This clause is the last by which he disposed of his property. He directed that his entire estate, real and personal, should be converted into cash and distributed, after the payment of legacies, among certain brothers and sisters and their legal representatives. He gave them legacies, not nominatim, but as a class, intending that the described class should take the whole fund. *Johnson v. Johnson,* 38 N. C., 426, 430. After the "entire estate" is disposed of no other property remained, and among those designated as a class "all the funds arising from the sale must be distributed." In these circumstances the lapsed legacy of Sandy Stevenson did not go to those who are described technically as the next of kin; it was a part of the general fund set apart by the testator for distribution among the entire class named in the fifth item as the objects of his bounty. We see no error in the court's disposition of this interest.

The devise or bequest to Mary Stevenson invites consideration of another question. The absence of a person from his domicile without being heard from by those who would reasonably be expected to hear from him if living raises a presumption that at the end of seven years he is dead, but not that he died at any particular time during this period. *Beard v. Sovereign Lodge,* 184 N. C., 154. If Mary Stevenson was living in January, 1912, as the evidence tends to show, there is no presumption that she was dead on 17 February, 1917, the date of the testator's demise; but without other evidence there is a presumption that she was dead on 29 August, 1929, when the life estate ended and the roll of the class was to be called.

Let us concede, as contended, that she died during the intervening period. Are the appellants in that event entitled to one-half of her share? This question raises another: What is the meaning of the term "legal representatives," as used in item five? The appellants say the term includes only those who would take from the same ancestor under the rules of descent and distribution; the appellee insists that it signifies children or "issue of the body."

Its meaning is to be determined by the context and the entire will. For this reason we need consume no time in reviewing the numerous cases in which the words have been variously construed. That Judge Stack understood their meaning to be "children" or "issue" is manifest from his judgment, and his construction was approved by this Court on appeal. Since the disbursement of the fund was made by the administrator in accordance with this judgment it is immaterial whether all the parties had notice of the order signed by Judge Clement in March, 1929. The judgment is

Affirmed.